May it please the Court, I'm David Cooper on behalf of the appellants in this case. The District Court was wrong in denying summary judgment to officers Huff, Monning, and Brenneman and the Court should reverse that. Well, don't we have questions of fact, and that is whether the decedent held a gun, pointed a gun at the officers before she was shot. The District Court did find that there was a question of fact as to whether Deanne Choate actually pointed the gun that she actually had at Officer Monning. The District Court did not find any question of fact with respect to whether Officer Monning or Officer Huff reasonably perceived Ms. Choate pointed the gun that she actually had at Officer Monning. When I say actually had, you don't mean that she had it in her hand. What we know is that there was, that she said the gun was in the bed. No, we know the gun was in the bed. The bed, there was a gun under the covers and her hand went under the covers. Whether she actually, whether the gun cleared the covers or not, that is one of the disputed facts. It is my belief that you can look at the Officer Huff body cam video and you can see that her hand is, and it does at least reasonably appear that she is pointing something at Officer Monning. Well, I looked at the body cam video and I can't see that. And beyond that point, it seems to me that you have taken the position throughout that the gun was in her hand. It seems to me that is a real problem for jurisdictional purposes. I'm not talking about whether the gun was pointed, I'm talking about the gun being in her hand. I don't see how that is taking the facts in the light most favorable to the plaintiffs. Taking the plaintiff's facts that are supported by evidence, because they had evidence that indicates that the gun was not in her hand. I'll stop there, but I have more. Go ahead. I'm sure you do, and I am obliged by both Supreme Court precedent and this court's precedent to take the facts as the district court found. No, you are, that is part of the puzzle. Just because the district court did not find that the gun was in her hand, and I'm not sure the court did, but as the court said, evidence being the light most favorable to the plaintiff supports the allegation that the decedent did not, in fact, remove her gun from under the covers. That is quoting the 781 of the record. That's what the district court said. So if she didn't remove the gun from under the covers, how was the gun in her hand? It doesn't have to come above the covers to be in her hand. Wait a minute, everything, your brief is predicated on the notion that somebody saw that gun. No, my brief is predicated on the officer's reasonable perceptions. They say they saw the gun. The judge- What they say is irrelevant. The point is- Judge Lundgren said that is a question of fact for the jury whether they actually saw that. Well, it is a question of fact whether they saw it, and plaintiff takes the position they didn't see it. Plaintiff has evidence that says they didn't see it, and then you continue to say that they did see it. It seems to me that's a problem. I'm not saying they did see it, I'm saying that Officer Mone and Officer Huff reasonably feared for their lives based upon the conduct of Deanne Chipp. Based on what? Based on the fact her hand did, in fact, go under the covers based on the actual reaction by Officer Mone in terms of no, no, no, don't touch that gun. Do we know where Officer Brennan was when the shooting began? Yes. Well, when the shooting began, he was falling into the closet in the bedroom. In those seconds when Officer Mone was saying what he said, Officer Mone's on this side of the bed, Officer Brenneman's on this side of the bed, and Deanne Chipp is between the two. And Officer Brenneman tried to reach down, felt the hard object underneath the covers, and then retreated into the closet as the shooting occurred. That evidence is contested. Not that evidence, no. At least some aspects of it. No, that evidence is not contested, nor is it contested that Officer Brenneman testified he did not see the gun. Because Deanne Chipp was between him and where the gun was. So we're dancing on whether or not the officers saw the gun or whether they perceived that they saw a gun. Yes, whether they reasonably perceived that their lives were in mortal danger is the question. And isn't that a factual question? And wouldn't it be important to know whether or not there was, in fact, a gun visible? No. Short answers, no. One, what were they responding to? Two, the suicidal woman, intoxicated, naked in her bed, has fired a shot, says she's got a gun. And the gentleman who called 911 said, I'm not going to go check on her, I'm afraid she'll shoot me. They respond, ask about the gun. There is no question that there was a gun, and that it was under the covers right next to her. What happened when Officer Mone reacted, and then Officer Huff reacted into Mone's reaction, was when Ms. Huff's left hand went down under her left buttock and underneath the covers. And then cameras start moving everywhere. Well, cameras start moving, but let's be clear here. The whole universe of, whether it was reasonable is going to turn in part on whether they saw a gun. Whether she had a gun in her hand, whether she presented a gun. And it's my understanding from your brief, you take the position she presented a gun. Whether she pointed it or not, she presented a gun. She displayed a gun. She produced a gun. I think that's the word that appears. Produced a gun. Is it not your position that she produced a gun? That's the only basis for their reasonable fear, right? No, sir. The reasonable basis for the fear is that there is a gun. She reaches under the covers, whether it's for the gun or not, and whether they reasonably feared for their lives at the time they took the action. Okay, so your version of the facts has nothing to do with a gun being present in her hand and produced. The reasonable belief that she had done so. Not that, and that she was doing so. Where do you get a reasonable, look. We're coming up with a universe of facts. We're supposed to be applying the law to a set of facts, okay? Whether that set of facts goes away in trial or whether that set of facts is real or not, we're taking plaintiff's version of the facts. Facts as found by the district court. That's the universe of facts. So it shouldn't be debatable. We should be applying the law to the facts. So the question is, is it part of your factual universe that she produced the gun? No, that's their argument that she produced the gun. She was ordered to produce the gun. They're the plaintiffs, and their version of the facts are the facts that work for qualified immunity, summary judgment, as long as they have evidence to support it, and they do. The universe of facts is one, we have four body cam videos of the events. That, under Scott v. Harris, you get to, and to the extent those videos blatantly contradict the version of events that's stated by the district court. I've looked at them, and this is one judge sitting there looking at it like Justice Scalia looked at his video. It's not there. So if you don't have this, work with me and assume it's not there. Then tell me, what is your version of facts from which they reasonably fear? Is it based only on the gun being under the sheets, or is it based upon the gun being produced? The gun was under the sheets, but it's her reaching for the gun that is the critical fact. So it's her movement. The gun? Yes. Is your brief saying that that is the predicate for their reasonable fear that she moved for the gun? Their reasonable perception that she pointed a gun at him. Whether they actually saw it, meaning whether the gun came above the sheets or not, Officer Mone testified he believed that she pointed a gun at him. Okay, so if the question is, the facts are that she moves for the gun, the gun is under the sheet. That's the fact. Then the question is whether it is reasonable for him to believe, based upon that set of facts, that she pointed the gun at him. It's whether, a half step back from that, whether he reasonably perceived his life to be in danger based on her conduct. Well, her conduct, well we've got to know what her conduct is. Is her conduct just reaching under the sheets and pulling for the gun, or is her conduct producing the gun? It's, either, we don't know. No, we don't know. What we have is objectively she reached for the gun. What set of facts are we going with? We need a set of facts here to apply the law to. That she reached under the sheets for the gun and Officer Mone believed that she had pointed it. What point he believes or not is irrelevant. I mean, what matters is what a reasonable officer in his position would believe. So the question is, what is the set of facts from which we determine what a reasonable officer would believe? And so I'm asking you, does that set of facts go to him pulling out the gun, her pulling out the gun, or is it just her reaching for the gun under the sheets? The latter. Okay, that's not what your brief says. No, it doesn't. I agree, and I take the stronger position. I think you can't see the gun in the video, and I know you disagree with me. And I have to live with that. Well, no, more to the point, the plainest version of the facts disagrees with you. And if the plainest versions of the facts disagree with you, and you're sitting here until the last minute arguing with that version of the facts, that gives you a jurisdictional problem. It's my contention, it's our contention, that you do have jurisdiction based upon the officers that whether she in fact pointed the gun, whether it came above the sheets or not, is not the material fact. Whether Officer Mone and then Officer Huff reasonably perceived that she went under the sheet and grabbed the gun, that is the material fact for both qualified immunity and the reasonable incident analysis. Let me just take you two or three steps here. At this stage of the litigation, when Officers Huff and Moroney, I may not be pronouncing that correctly, approached the bed, were her hands visible or not visible under your evidence at that stage? I need to take this two or three steps. When Mone entered the room, her hands were above the sheets. Above the sheets. She was zipping a hoodie. So they didn't have to ask her to show her hands? No, not initially. Way back earlier in the video, you hear Officer Brenneman say, please show me your hands. And under your evidence, did she show her hands? During the entire time, she was nude and they were asking her to get dressed and get out of the bed. And her hands were, until they went under the covers, just immediately prior to the shooting, were always above the covers. That can be seen in mostly the Brenneman video. Under your view, she took her visible hand and put it under the covers. Correct. Down her side. That can also be seen on the Mone video. And separate and apart from the question of gun above the covers, below the covers, Officer Brenneman is entitled to judgment as a matter of law no matter what. If that's what I was going to ask you, so this whole question of gun produced, gun not produced, really is not material to the theory of liability as it relates to Officer Brenneman, right? That's accurate. Because Officer Brenneman was, he didn't shoot. He had the rifle. He didn't fire. And all he did was fall under the closet while the shooting was going on. And he didn't claim to see the gun either. Actually, he testified he didn't see the gun. He didn't see the gun. So the theory of liability is, well, is it correct that the theory of liability is simply that his conduct was reckless in engendering the shooting? Correct. Okay. Danger creation. I don't know that it's a danger creation argument because that's a separate constitutional issue. The question under Sevier and Allen is whether that conduct is reckless. And as we present, one, it's not reckless to just not go in and throw the naked lady on the floor and slap handcuffs. They're saying that he was reckless by not doing so. By restraining someone that they knew had a gun and had shot the guy. At least had been reported to. And so they had reason to believe those things. And the lessons from Sevier and Allen are don't run up screaming and shouting and laying hands on the person who is suicidal and has a gun. And the theory of liability as to Officer Brenneman is it's reckless and a constitutional violation to not throw that naked lady on the floor and put handcuffs on her. And whether that requires abrogating Sevier and Allen or just acknowledging under especially the Sheehan decision that you can't square Sevier and Allen, the recklessness standard with the holding in the Sheehan decision especially and to a lesser extent the Mendez decision, the judgment against or the denial of judgment to Officer Brenneman has to be reversed. I see my time has expired unless the court has other questions. Thank you counsel. May it please the court. My name is Michael Barzee and I represent. Will you take that microphone next to you? There you go. You seem to be used to soft speech. My name is Michael Barzee and I represent Appellee Michelle Choke whose mother was fatally shot by the police officers of the city of Gardner, Kansas. Before I get into my points here I would like to address a few things that were said by opposing counsel. The fact that Officer Huff's video camera blatantly contradicts, and this is from his jurisdictional memo, blatantly contradicts that a gun is visible. In other words, he believes that the still shots from Officer Huff's camera shows that there is a gun. In his merit brief, he concedes that the officer's body cameras do not definitively show there is a gun. I'm not sure how you can mold those two together. You mean the gun out from under the covers? That is correct. Nobody is disputing that there was a gun and that everybody knew there was a gun. There was a belief that there was a gun, but no, we are not disputing that a gun was in the bed with DeAngeo. Secondly, he continues to refer to the perception of the officers and that the district court did not make any finding, any specific finding about the actual perception of the officers. I want to have this court take note of Pauley v. White, decided in 2017, and the court addressed this very issue. In that case, Officer White believed, it was his perception, that Pauley pointed a silver gun at him and fired in his direction. However, the court noted there was physical evidence that directly contradicted Officer White's perception of the events. This court noted that on summary judgment, it's inappropriate for it to decide these contradictions. Particularly, it noted that when a victim, like in this case, in our case, and in the White case, the person is dead and cannot give their version of what actually happened. The court should not rely on self-serving testimony of the officers. In this case, we have three of the four officers, Mone, Huff, and Anderson, claim that they saw a gun pointed at them. Officer Brenneman, though, only a couple of feet away, says he saw no gun. Now, we're on Officer Brenneman. How can he be held liable when he didn't pull the trigger? This court has recognized two ways in which that can be, and I'd like to address one today. Officer Brenneman actively participated in the events leading up to the use of deadly force. For several reasons, he actively participated. One, he was the primary officer on the scene. That meant that all commands and communications with D.N. Choke were supposed to be done by him and no other officer. Secondly, and I think very significantly, multiple times he demanded and invited D.N. Choke, a suicidal and intoxicated woman who he believed the gun was in the bed with, to produce the gun. And the last time in which he invited her to produce the gun, that's when she responds, oh, here it is. Within seconds of that response, she is fatally shot. All right. So that means that he's negligent. So what? Under the law, that doesn't matter. And so he's sitting there. I mean, in a brief, you talk about he needs to pull her out of the bed and put her in handcuffs. Where does law support that? And not only in the clearly established law front, as opposing counsel points out, most of these cases are cases where people go out and rough people up. In this case, he didn't do anything. Go ahead, please. Yes. So a couple of things. First, the court did recognize that he wrestled with her. So I would say that that is not just being cautious. Actually wrestled with her before she was shot. But he was not assertive, aggressive. I mean, the severe cases, we have several cases where we have concluded that the officers really instigated the shooting that followed because of their screaming at a fragile victim and causing that person to react. We don't have that here. Well, I would disagree with that. Isn't he calm? Isn't he discussing with her? He's not screaming at her. Well, I would disagree with that. I do believe that it does get escalated. I think with their commands, they get more and more, I would say, aggressive. As a matter of fact, Officer Brenneman recognized that the only crisis intervention trained officer, Officer Mone, came in the room all agitated and apparently not happy with the situation. So clearly established law as regards the claim against Brenneman is what? I think it's reckless on its face. And I think the court alludes at that. And what case do we look at? Case or cases? Case or cases? I think it would be two. First of all, I think the Allen and Sevier case, as this court recognized in Hastings, what we learn, as the Hastings case says, from Allen and Sevier, is that when you're dealing with a suicidal person, you may not escalate and you must ask additional information of a suicidal individual. Now, when they ask, we have experts that testify. Well, is there evidence that Brenneman escalated? Yes. What did he do? Yes. By continuing to demand that she produce the gun, that escalated it. Additionally, there is expert testimony, and including to also the officer's training, the way to de-escalate the situation is to control the movements of Deanne Chode. Notably... Which would be to grab her and pull her out of the bed? Yes, absolutely. And notably, let's not forget that Andrew Musto... That's aggressive conduct. Wouldn't that have caused her to grab the gun? Well, no, because as the opposing counsel admitted, it wasn't until she reached under the covers at the very end of the scenario, she always had her hands above the covers, just in a matter of feet or two of where Officer Brenneman was standing. Not to mention, let's not forget that Andrew Musto, the reporting party, he was immediately, within 60 seconds of being spilled into the office at the door or just inside the home, he was handcuffed and removed from the residence. And why? That tells us what? That tells us why wasn't the same thing done to Deanne Chode? Because she was sitting in a bed, having discharged a gun, and was naked and didn't want to get out of the bed. That's why. But there is no proof that she discharged her weapon. I don't think anybody's talking about her discharging her weapon. The point is that she had a gun. The officer goes in there, the officer's talking to her. We need reckless conduct. And the notion that he should have pulled her out and handcuffed her, if he had done that and then she had produced the gun and she had gotten shot, would you be sitting here right now saying that he was reckless for pulling her out of the bed when she was naked? I can't speak to that. Those aren't the facts of the case. But I will say, though, that that's not the only reckless conduct that we say Officer Brenneman did in this case. Like I said, the district court found that to continue to invite an intoxicated woman to produce a gun increases the likelihood that she would act erratically, including producing the gun as requested. Let me ask this question. As it relates to the notion of recklessness, the district court said there was a genuine dispute of fact as it relates to recklessness. Recklessness is a legal characterization of historical facts, right? That's correct. Okay. All right. So we can engage in a conversation about whether the underlying historical facts equal recklessness. That's correct. Yes. I would agree with you. So additionally, you know, I would say that the Seaview and Allen case should not be abrogated. Like I cited in my brief, the provocation rule is so materially different than what this court did in the Seaview and Allen case when it's really just looking at the totality of the circumstances of the case. Whereas the provocation rule seems to suggest that you can take a prior, distinct, and separate constitutional violation and somehow make an otherwise reasonable use of force unreasonable. Let me ask you, though. Even if you take the premise that Allen and Seaview speak to this situation and inform it, the Supreme Court made clear in the White v. Pauli case or Pauli v. White case that you alluded to, made clear in Mullinex that we need to focus on the factual specifics in determining clearly established law. And indeed talked about the notion that there's more leeway in the Fourth Amendment context than any other context. Well, not, I mean, backup. There is leeway in the Fourth Amendment context to make that determination because it's fluid. It's a reasonableness test. All that said, if Seaview and Allen are distinct fact patterns from this one, I'm struggling to understand how they would have put a reasonable officer, Officer Brenneman in particular now I'm thinking about, on notice that by sitting there and not doing anything and by telling her to produce the gun, he didn't lay hands on her in that sense, telling her to produce the gun, that he was violating her constitutional rights. So I guess what I'm talking about is a level of specificity. And I take it you will agree with me that this Court did not give us anything in terms of a clearly established law analysis in applying the law to the facts of this case. That was like, I don't know, three sentences in saying that this was clearly established law. Right. I would agree with you. We didn't get that from the Court then. You're going to get it from us. So tell me why this would be clearly established law. Well, I think there's two things. Well, first of all, I mean, obviously, this Court has recognized that there is a sliding scale when we're using a clearly established case. You know, the analysis, including, obviously, the more egregious the actions are, the less specificity is needed. Yeah, and so you're looking at that, that sort of problem, that this is egregious conduct. Yes, in addition to what I've already argued with Allen and Sevier, of which, like I said, the Hastings case has already laid out what an officer, what we can learn from Allen and Sevier, not what's been clearly established from those two cases. Okay. Just in conclusion here, Your Honors, if there's no other further question, initially I would say that this Court lacks jurisdiction to decide the merits of this case for two reasons. One, obviously, the District Court's holding is really just a determination of evidence sufficiency, and under Johnson v. Jones in the U.S. Supreme Court case of 95, that that is not proper for interlocutory appeal. And secondly, I think it's rather clear here today and in the briefing that the appellant officers refused to view the lights in the most favorable to the plaintiff. And if there's no other questions, Your Honor, I'll have to go. Thank you. And I think you are out of time as well. Thank you. Thank you both for your arguments this morning.